IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TAVISTOCK CIVIC ASSOCIATION, INC. | § | No. 222, 2019 |
| | § | |
| | § | |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Court of |
| | § | Chancery of the State of |
| v. | § | Delaware |
| | § | |
| JAMES W. OWEN JR. and | § | |
| JANA OWEN, | § | C.A. No. 2017-0571-MTZ |
| | § | |
| Plaintiffs Below, | § | |
| Appellee. | § | |

Submitted: October 23, 2019
Decided:    December 3, 2019

Before **SEITZ**, Chief Justice; **VAUGHN**, and **TRAYNOR**, Justices.

## **O R D E R**

This 3rd day of December 2019, after careful consideration of the parties'
briefs and the record on appeal, it appears to the Court that the March 26, 2019 letter
opinion of the Court of Chancery awarding Appellees the recoverable expenses they
incurred in connection with a motion to compel discovery under Court of Chancery
Rule 37(a)(4)(C) should be affirmed on the basis of and for the reasons stated in the
letter opinion.[1]

---

[1] *Owen v. Tavistock Civic Association, Inc.*, 2019 WL 1349656 (Del. Ch. Mar. 26, 2019) ("*Opinion Below*").

(1) The underlying dispute concerned a fence. Appellees James W. Owen, Jr. and Jana L. Owen ("Appellees" or the "Owens") purchased a home in the Tavistock Community, a deed-restricted community in which "[no] . . . fence shall be commenced, erected or maintained" unless approved in writing by Appellant Tavistock Civic Association, Inc. ("Appellant" or "Tavistock").[2] According to Tavistock, before the Owens purchased their home, they asked the Tavistock board whether they could erect a six-foot tall stockade privacy fence on the property. Tavistock's board said no, and the Owens purchased the property anyway. Nevertheless, on January 25, 2017, the Owens submitted an application to the Tavistock board seeking permission to build the six-foot tall privacy fence they had previously inquired about. Tavistock's board denied the Owens' application, explaining that Tavistock had a "long standing practice" of allowing only certain types of fences, and those only up to four feet tall, in order to "preserve the open feel of the community."[3] As litigation progressed, Tavistock continued to maintain that it had "uniformly upheld the deed restrictions regarding fences from April 9, 1984, to the present."[4]

(2) Accordingly, the Owens sought discovery dating back to 1984, including identification and production of "all documents that reference or relate in

___

[2] App. to Opening Br. at A0028 (hereinafter "A___").
[3] A0022; A0057.
[4] A0137; *see, e.g.*, A0080.

2

any way to all requests by residents of Tavistock . . . for a fence on their property."[5] Tavistock responded to the discovery requests with the specific objection that the requests sought "information without any limitation to the time period relevant to [the] matter"[6] and offered to "produce documents created, received or obtained only within three (3) years of the filing of the Complaint."[7]

(3)     The Owens filed a motion to compel under Court of Chancery Rule 37 (the "Motion to Compel" or the "Motion"), requesting that the Court of Chancery order Tavistock to "conduct a complete and thorough search of all its records and documents, whether in the custody of current Board Members or past Board Members, or elsewhere."[8]  The Owens also requested attorneys' fees in connection with the Motion.

(4)     The Court of Chancery granted in part and denied in part the Motion to Compel, and denied attorneys' fees without prejudice, noting that "fees and costs will be handled pursuant to 10 *Del. C.* § 348(e) at the conclusion of this action."[9] The Court found that, because Tavistock, in its defense, asserted that it had consistently enforced the deed restriction on fences since April 9, 1984, discovery was appropriate going back to that date.  But the court also found that certain

---

[5] Exhibit B to Plaintiff's Motion to Compel Discovery Responses, *Owen v. Tavistock Civic Ass'n, Inc.*, 2018 WL 3877179 (Del. Ch. Aug. 14, 2018).
[6] App. to Answering Br. at B14 (hereinafter "B___"); B45.
[7] B14; B45.
[8] B8.
[9] A0138.

interrogatories that the Owens had propounded and that were the subject of the Motion to Compel were protected by privilege.

(5)     Shortly after the Court of Chancery's order was entered, Tavistock's board decided to moot the Owens' complaint in order to avoid discovery costs by amending the board's fence policy and approving the Owens' request.[10]

(6)     The Owens then petitioned for all of their costs and legal fees.[11]  After a hearing, the Court of Chancery granted attorneys' fees in the amount of $5,000.00 in connection with the Motion to Compel under Court of Chancery Rule 37(a)(4)(C). Tavistock appealed.

(7)     We review the Court of Chancery's award of attorneys' fees for abuse of discretion.[12]

(8)     Rule 37(a)(4) authorizes an award of fees and sanctions in relation to a motion to compel under three scenarios:  (A) fees for the movant if the motion is granted (subsection (A)); (B) fees for the opposition if the motion is denied (subsection (B)); and (C) discretionary allocation if the motion is granted in part and denied in part (subsection (C)).[13]  Under both subsections (A) and (B), the award of

---

[10] According to Tavistock, it is a voluntary civic association with very limited resources.
[11] The Owens sought fees for being the prevailing party under Court of Chancery Rule 54(d) in the amount of $1,127.50, attorneys' fees in connection with the Motion to Compel in the amount of $5,340.40, and fees in the amount of $18,906.16 because Tavistock allegedly acted in bad faith while defending its enforcement of the community's deed restrictions.
[12] *RBC Capital Mkts., LLC v. Jervis*, 129 A.3d 816 (Del. 2015).
[13] DEL. R. CH. CT. 37(a)(4).

4

fees is warranted *unless* the Court finds that the losing party was "substantially justified" in opposing or making the motion to compel or that other circumstances make an award of expenses unjust.[14]

(9)     While subsection (C) does not explicitly require an analysis of whether the positions taken by a party against whom fees and expenses are sought are "substantially justified," implicitly it does.  Otherwise, for instance, a party who is substantially justified in opposing the entirety of a motion to compel—but, despite that justification, is unsuccessful as to a portion of its opposition—could arguably be liable for fees related to the unsuccessful portion, merely based on a partial lack of success.  That, in our view, is not how Rule 37(a)(4) is structured.  Instead, reading subsections (A), (B), and (C) together, Rule 37(a)(4) only allows for the shifting of fees in favor of a successful party—either a movant or opposing party—when its adversary's position was not substantially justified.  Subsection (C) merely authorizes the court to apportion the fee award "in a just manner" where, as here, the success of the party seeking fees is partial.

(10)    Tavistock complains that, although the Court of Chancery recognized that, to avoid fee-shifting, Tavistock's opposition had to be "substantially justified," the court "equated substantial justification with success in its opposition."[15]  If we

---

[14] *Id.*
[15] Opening Br. 22.

5

were to look no further than the Court of Chancery's finding that "[the] apportionment of reasonable fees is justified here because the Owens succeeded in nearly all of their requests in the Motion to Compel," Tavistock's contention would gain some purchase. But the Court of Chancery went further, finding that Tavistock's opposition to the thirty-year discovery date range was not substantially justified because its representation regarding that date range—that it had consistently upheld the relevant deed restriction since April 9, 1984—was a cornerstone of its defense. Given that Tavistock sought to rely on a representation and then opposed discovery aimed at testing its accuracy, it was within the court's discretion to find that Tavistock's objections were not substantially justified by its alleged countervailing interests.

(11) Tavistock also argues that the Court of Chancery erred in failing to consider the burden on Tavistock of complying with the Motion to Compel. But Tavistock did not proffer—in opposition to either the Motion to Compel or the Owens' motion for costs and fees—anything more than conclusory allegations as to the actual burden it would be forced to bear should it produce "34 years-worth of information from anyone and everyone who had ever been a member of Tavistock's [b]oard during the last three decades."[16] For example, Tavistock did not provide an estimate of the cost of such production, nor did it provide an estimate of the number

---

[16] Opening Br. 19.

of individuals it would have to seek such documents from. In the absence of such evidence, Tavistock's contention that the Court of Chancery abused its discretion in its treatment of the purported burden and expense is unpersuasive.[17]

(12) The remaining arguments Tavistock advances in scattershot fashion are, in one way or another, attacks on the Court of Chancery's determination that Tavistock's opposition to the motion to compel was not substantially justified. The main thrust of these arguments is that the court failed to engage substantively with Tavistock's claims about how burdensome compliance with the Owens' discovery requests would be. We reject these arguments for the same reasons that are set forth above.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Court of Chancery is AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[17] Tavistock's "unduly burdensome" argument rests solely on *Texaco Dev. Corp. v. Dow Chem. Co.*, 1985 WL 44675 (Del. Ch. Sept. 11, 1985), a case where "the parties attempted to resolve their [discovery disputes] on their own," mutual acknowledgments and concessions were made, and the scope of the discovery was narrowed via agreement between the parties before the motion to compel was ruled upon. Here, Tavistock may have produced some materials, but it stood by its opposition to the time range and no concessions were made by either party as to any production from more than three years prior to the litigation—a far cry from the attempts made by the parties in *Texaco* to resolve their problems without interference by the court. We also separately note that the award of attorneys' fees for discovery violations rests squarely in the Court of Chancery's discretion, and we will not hold that one Vice Chancellor's discretion in one situation binds another Vice Chancellor's discretion in another situation as a matter of law.

7